16 MAG 6295

ORIGINAL

Approved: ________________________
ELI J. MARK
Assistant United States Attorney

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

U.S. DISTRICT COURT FILED SEP 30 2016 S.D. OF N.Y.

| | |
|---|---|
| UNITED STATES OF AMERICA | **COMPLAINT** |
| - v. - | Violations of 21 U.S.C. § 846; 18 U.S.C. §§ 1951, 924(c)(1)(A)(i) & 2 |
| YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, | |
| Defendants. | COUNTY OF OFFENSE: BRONX |

DOC # 1

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHN SALVITTI, a Task Force Officer with the Drug Enforcement Administration, being duly sworn, deposes and states:

**COUNT ONE**

1. In or about September 2016, in the Southern District of New York and elsewhere, YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, BONILLA-PONCE, GUILLEN, and HERNANDEZ agreed to commit an armed robbery of individuals believed to be engaged in narcotics trafficking.

(Title 18, United States Code, Section 1951.)

**COUNT TWO**

2. In or about September 2016, in the Southern District of

New York and elsewhere, YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

3. It was a part and an object of the conspiracy that YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4. The controlled substance that YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, the defendants, conspired to distribute and possess with the intent to distribute was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

**COUNT THREE**

5. In or about September 2016, in the Southern District of New York and elsewhere, YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the robbery conspiracy charged in Count One of this Complaint, and during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count Two of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crimes, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, to wit, a 9 millimeter semi-automatic handgun.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6. I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), and I am one of the agents with primary responsibility for the investigation of this case. This affidavit is based upon my own observations, my conversations with other law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited

purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7. In or about September 2016, the DEA began an investigation into an individual, later identified as YEHUDY BONILLA-PONCE, the defendant.

8. During the course of this investigation, I and other law enforcement agents have worked with a cooperating witness ("CW-1"). CW-1 has pleaded guilty to federal crimes including narcotics offenses and has been cooperating with law enforcement in the hopes of receiving leniency at sentencing. Information provided by CW-1 as part of this investigation and others has proven reliable, and has been corroborated by other independent evidence, some of which is described below.

9. On or about September 13, 2016, YEHUDY BONILLA-PONCE, the defendant, CW-1 and another individual ("Individual-1") met with in a McDonalds Parking Lot in the vicinity of Webster Avenue and Belmont Avenue in the Bronx (the "Bronx Location), which meeting was surveilled by DEA Agents, including myself, and audio recorded. I have reviewed a recording of this meeting with the aid of a Spanish interpreter. From doing so, as well as from conducting surveillance and debriefing CW-1, I have learned that during this meeting, the following took place, in substance and in part:

a. BONILLA-PONCE met CW-1 and Individual-1 at the Bronx Location.

b. CW-1 arrived at the Bronx Location with Individual-1 in a black Toyota Camry (the "Camry).

c. BONILLA-PONCE entered the Camry and CW-1 discussed with them a potential robbery of a stash location used by a drug supplier to store between ten and twenty kilograms of cocaine (the "Robbery")

d. BONILLA-PONCE stated that he had a team of four or five associates that could carry out the Robbery and that they would bring firearms to conduct the Robbery.

e. BONILLA-PONCE discussed that he would be prepared to use violence in connection with the drug robbery.

        f.    BONILLA-PONCE discussed with CW-1 how the proceeds of the drug robbery would be split amongst themselves, and if they found any firearms in the stash house that BONILLA-PONCE would get to keep them.

        g.    BONILLA-PONCE discussed with CW-1 that they would meet again before the Robbery so that CW-1 could meet members of BONILLA-PONCE's team.

    10.    Between on or about September 13, 2016 and September 27, 2016, based on my conversations with CW-1 and my review of recorded phone calls with the aid of a Spanish interpreter, I have learned, that CW-1 and YEHUDY BONILLA-PONCE, the defendant, over the course of a number of conversations, discussed, in substance and in part, the following:

        a.    BONILLA-PONCE was still interested in doing the Robbery, and the plans for the Robbery.

        b.    BONILLA-PONCE wanted to obtain a new phone number before they met again.

        c.    BONILLA-PONCE and CW-1 arranged to meet again to plan the Robbery further.

    11.    On or about September 27, 2016, YEHUDY BONILLA-PONCE, the defendant, CW-1 and another confidential source ("CW-2")[1] met at the Bronx Location, which meeting was surveilled by DEA Agents, including myself, and audio recorded. I have reviewed a recording of this meeting with the aid of a Spanish interpreter. From doing so as well as conducting surveillance and debriefing CW-1 and CW-2, I have learned that during this meeting, the following took place, in substance and in part:

        a.    BONILLA-PONCE and CW-1 and CW-2 discussed the plan for the Robbery, and that they anticipated obtaining between 10 and 20 kilograms of cocaine.

        b.    BONILLA-PONCE discussed that he had experience participating in robberies.

---

[1] CW-2 has pleaded guilty to federal narcotics offenses and has been cooperating with law enforcement in the hopes of receiving leniency at sentencing. Information provided by CW-2 as part of this investigation and others has proven reliable, and has been corroborated by other independent evidence, some of which is described below.

c. BONILLA-PONCE stated that he had arranged for a customer to purchase his portions of the drugs at $36,000 per kilogram.

12. Between on or about September 27, 2016 and September 29, 2016, based on my conversations with CW-1 and my review of recorded phone calls with the aid of a Spanish interpreter, I have learned, that CW-1 and YEHUDY BONILLA-PONCE, the defendant, over the course of a number of the conversations discussed, the following in substance and in part:

a. BONILLA-PONCE discussed further plans for the Robbery.

b. BONILLA-PONCE assured CW-1 that his crew would be ready to the do the Robbery and were experienced in doing robberies.

c. BONILLA-PONCE stated that he and his crew were planning to pick-up guns in Brooklyn, and wanted CW-1 to drive them to pick-up the guns from their supplier.

d. CW-1 told BONILLA-PONCE that he was going to meet him at the Bronx Location and he should get the guns before they meet.

13. On or about September 29, 2016 at approximately 7:20PM, at the direction of law enforcement agents, CW-1 met with YEHUDY BONILLA-PONCE, the defendant, and two other males, later identified as JIMMY GUILLEN and GERARDO HERNANDEZ, the defendants, at the Bronx Location, which meeting was surveilled by law enforcement agents including myself, and audio recorded. I also have spoken with CW-1 about this meeting. From my participation in the surveillance, my conversations with other law enforcement agents, and my conversations with CW-1, I have learned that during this meeting, the following took place, in substance and in part:

a. CW-1 received a phone call from BONILLA-PONCE informing CW-1 that BONILLA-PONCE and his crew would meet CW-1 at the Bronx Location, but they needed to stop at a hardware store first.

b. Surveillance observed CW-1 park the Camry at the Bronx Location.

c. Surveillance observed BONILLA-PONCE walking with GUILLEN, who was holding a knapsack (the "Knapsack"), to the Bronx Location to meet CW-1.

        d. BONILLA-PONCE and GUILLEN then entered the Camry, and discussed the plans for Robbery with CW-1.

        e. BONILLA-PONCE and GUILLEN told CW-1 that they were going to meet another member of their crew in the McDonalds and then would return to the Camry.

        f. BONILLA-PONCE and GUILLEN entered the McDonalds and returned to the Camry with HERNANDEZ.

        g. BONILLA-PONCE, GUILLEN, and HERNANDEZ entered the Camry, and they discussed the drug robbery.

        h. CW-1 showed BONILLA-PONCE, GUILLEN, HERNANDEZ a hidden compartment (the "Trap") in the center console of the Camry and told BONILLA-PONCE and his crew that they needed to put their firearms in the Trap.

        i. HERNANDEZ removed a semi-automatic pistol from his waistband and handed it to CW-1 to place inside the Trap, which CW-1 did.

        j. CW-1 told BONILLA-PONCE, GUILLEN, and HERNANDEZ, that another participant was in the McDonalds, and exited his vehicle and walked in the direction of the McDonalds. BONILLA-PONCE, GUILLEN, and HERNANDEZ remained in the Camry.

14. On or about September 29, 2016, at approximately 7:30 PM, I and other law enforcement agents participated in the arrests of YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, the defendants. From my participation in the arrests, and my conversations with other participating law enforcement agents, I have learned the following:

        a. BONILLA-PONCE, GUILLEN, and HERNANDEZ, were seated inside the parked Camry. Law enforcement officers approached the Camry in the Bronx Location.

        b. The Knapsack was recovered from the rear passenger area of the Camry and three pairs of gloves, a duffel bag, and a black hooded sweatshirt was found inside it.

        c. During a search of the Camry, law enforcement officers found a loaded 9 millimeter caliber semi-automatic Taurus Millennium pistol, in the Trap.

WHEREFORE, I respectfully request that YEHUDY BONILLA-PONCE, JIMMY GUILLEN, and GERARDO HERNANDEZ, the defendants, be imprisoned or bailed, as the case may be.

JOHN SALVITTI
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
30th day of September, 2016

THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York